# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ADAM HAWTHORNE,

    Plaintiff,

v.

MACKENZIE BENNINGTON, *et al.*,

    Defendants.

3:16-cv-00235-RCJ-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

This case involves a civil rights action filed by Plaintiff Adam Hawthorne ("Hawthorne") against Defendants Mackenzie Bennington ("Mackenzie") and Whitney Bennington ("Whitney") (collectively referred to as "Defendants"). Defendants have filed a motion for summary judgment. (ECF Nos. 101, 103, 108.)[2] Hawthorne responded (ECF No. 113), and Defendants replied (ECF No. 116). Also before the court is a motion for FRCP 11(b) sanctions filed by Hawthorne (ECF No. 109). Defendants responded (ECF No. 110) and Hawthorne replied (ECF No. 111). Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment (ECF No. 101), be granted and Hawthorne's motion for sanctions (ECF No. 109) be denied as moot.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Hawthorne is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 97.) On May 2, 2016, proceeding *pro se*, Hawthorne filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983, alleging prison officials retaliated

---

[1] This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] ECF No. 103 consists of sealed documents filed in support of the motion for summary judgment; ECF No. 108 is an erratum authenticating the exhibits filed in support of the motion for summary judgment.

against him in violation of the First Amendment; were deliberately indifferent to his medical needs in violation of the Eighth Amendment; and denied him due process of law in violation of the Fourteenth Amendment. (ECF No. 1-1 at 4-7.) On March 8, 2017, the District Court entered a screening order dismissing the complaint with leave to amend. (ECF No. 4.) Hawthorne subsequently filed a third amended complaint ("TAC") (ECF Nos. 9/10), which the District Court dismissed on April 16, 2018. (ECF No. 11.) Hawthorne timely appealed the dismissal of his TAC. (ECF No. 14.)

On February 25, 2019, the Ninth Circuit reversed the dismissal of the Eighth Amendment deliberate indifference claim and First Amendment retaliation claim, affirmed the dismissal of the Fourteenth Amendment due process claim, and remanded for further proceedings. (ECF No. 24.) After remand, the case proceeded to discovery. (*See* ECF No. 42.)

When Hawthorne filed his initial complaint, he named defendant Mackenzie Bennington as the female nurse involved in the incident. (ECF No. 1-1). During the course of discovery, however, Hawthorne learned there were two different nurses with the last name "Bennington" present during the incident. (*See* ECF No. 83 at 4). On August 13, 2020, Hawthorne learned that Whitney Bennington, Mackenzie Bennington's wife, was the female nurse present during the incident. (*Id.*) After discovering this information, Hawthorne moved to amend his complaint to add Whitney Bennington as a named defendant. (*Id.*) The court granted the motion for leave to amend the complaint, (ECF No. 96), thus the Fourth Amended Complaint ("FAC") (ECF No. 97), is the operative complaint in this case.

Hawthorne's FAC alleges that on January 2, 2016, Hawthorne suffered a back spasm that caused him severe pain and rendered him immobile. (ECF No. 97 at 4.) Another inmate sought help from the unit officer and the nurse on duty responded. (*Id.*) The responding nurse took Hawthorne's blood pressure and pulse and claimed Hawthorne was faking the incident. (*Id.*) Hawthorne states while he was in agonizing pain and unable to move, the nurse refused to render aid. (*Id.*) Hawthorne then asked the guard to grab

2

him an informal grievance. (*Id.*)  This request allegedly angered the nurse and she told Hawthorne she would "write him up on charges of lying to staff and of interfering with the duties of staff." (*Id.*)  A week after the incident, Hawthorne received treatment from a medical doctor and was provided a cane and wheelchair. (*Id.*)

On January 27, 2020, Defendants filed their motion for summary judgment. (ECF No. 101.)  Defendants assert they are entitled to summary judgment because: (1) Hawthorne failed to exhaust his administrative remedies before filing suit; (2) the undisputed evidence shows Defendants did not violate any of Hawthorne's clearly established constitutional rights; and (3) alternatively, Defendants are entitled to qualified immunity. (*Id.*)

## II.     LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.*  Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential

element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . [I]n fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

///

## III. DISCUSSION

### A. Civil Rights Claims Under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines

whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the

6

treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1.  Analysis

Hawthorne has a chronic back/spine condition dating back to 2009. (ECF No. 113 at 2, 52-53.) According to an Unusual Occurrence Report, on Saturday, January 2, 2016,[3] at 6:12 AM, Hawthorne made an emergency "man down" call to prison staff based on complaints of lower back pain and a tingling sensation going down his left leg. (ECF No. 103-1.) Defendants and other staff arrived at Hawthorne's cell within six minutes of the man down call. (*Id.*) Defendants evaluated Hawthorne and Hawthorne asked if he could be seen by a doctor the following Monday. (*Id.*) The evaluation found Hawthorne to be stable and suffering from a chronic/routine medical need with no urgent or emergent condition present. (*Id.*) Hawthorne was instructed to follow the appropriate kite process. (*Id.*) Additionally, in Mackenzie's response to request for admissions, Mackenzie stated he "performed a physical assessment and a focused neurologic assessment in addition to a complete set of vitals on [Hawthorne] according to documentation on the [Unusual Occurrence Report] for the incident in question." (ECF No. 113 at 51.)

That same day, Hawthorne filed a medical kite stating: "I need to see a doctor about my lower back, I'm haveing [sic] severe pain in my back. I cannot sleep or stand on my own. I also had to do a man down…." (ECF No. 101-4.) Hawthorne's medical records show he was seen and treated for his back pain on Monday, January 4, 2016. (ECF No. 103-2 at 2.) Hawthorne was diagnosed as having a probable L5 disc bulge and was prescribed prednisone, baclofen, and a wheelchair. (ECF Nos. 103-2 at 2; 103-3 at 2.)

---

[3] The court takes judicial notice of the fact that January 2, 2016 was a Saturday. *See* Fed. R. Evid. 201(b); *see also Plotner v. AT&T Corp.*, 224 F.3d 1161, 1167 n.1 (10th Cir. 2000) (taking judicial notice "of the days of the week upon which the dates at issue fall"); *Fisher v. United States*, 2016 WL 11520616, at *2 (C.D. Cal. Nov. 23, 2016) (taking judicial notice that October 16, 2016 was a Sunday).

Further, review of Hawthorne's medical notes shows his back pain was treated continually by NDOC medical staff. (*See* ECF Nos. 103-2; 103-3.)

When viewing the evidence in the light most favorable to the nonmoving party, the undisputed facts show that Hawthorne had a serious medical need related to his back pain. *See Colwell*, 763 F.3d at 1066. Therefore, Hawthorne has made an adequate showing from which a reasonable jury could find a serious medical need.

However, the undisputed facts show Defendants affirmatively treated Hawthorne and Hawthorne cannot establish "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Thus, Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325.

The burden then shifts to Hawthorne to produce evidence which demonstrates Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102. To satisfy the objective element Hawthorne must show that Defendants failed to treat a serious medical condition. *See Jett*, 439 F.3d at 1096. Hawthorne asserts that Defendants only took his vitals, did not assist him in being seen by a doctor, and a reasonable response would have been to conduct an onsite examination of Hawthorne's back/spine, read his medical records, and contact the on-call physician for permission to administer some level of pain medication or muscle relaxer. (ECF No. 113 at 14-15, 17.) The record shows Hawthorne was seen and evaluated by Defendants within six minutes after he called his man down for back pain. (*See* ECF No. 103-1.) Mackenzie stated that in addition to assessing Hawthorne's vitals, he also performed a physical assessment and a focused neurologic assessment. (ECF No. 113 at 51.) Further, Hawthorne's medical records show he received further evaluation and treatment two days later and continually received care and treatment for his back pain by NDOC medical providers. (*See* ECF Nos. 103-2, 103-3.)

Hawthorne's allegations as to the soundness of medical judgments are outside of

his personal knowledge and/or require medical expertise. Thus, these allegations would not be admissible at trial, and a reasonable trier of fact would have no evidence upon which to find those alleged facts. *See Anderson*, 477 U.S. at 252; Fed. R. Civ. P. 56(c)(4). Additionally, Hawthorne has not shown—nor is there any evidence to support—that he suffered further injury as a result of any delay in treatment. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). Further, while Anderson may have disagreed with Defendants' chosen course of treatment, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a §1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Therefore, Hawthorne cannot satisfy the objective element that Defendants failed to provide treatment for his back pain, *Jett*, 439 F.3d at 1096, nor can he satisfy the subjective element that prison officials were deliberately indifferent to his medical needs, as the evidence demonstrates that Defendants did not deny, delay, or intentionally interfere with his treatment. *See Hallett*, 296 F.3d at 744. Accordingly, the court recommends that Defendants' motion for summary judgment be granted as to the deliberate indifference to serious medical needs claim.

### C. First Amendment – Retaliation

Hawthorne alleges that Defendants subjected him to retaliatory adverse actions through the filing of disciplinary charges because Hawthorne exercised his right to seek medical attention and requested a grievance to complain about what he perceived as Defendants' indifference to his medical needs. (*See* ECF No. 97; ECF No. 113 at 18.)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A

retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected First Amendment conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567–68.

To prevail against Defendants' motion for summary judgment, Hawthorne must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3.  In support of summary judgment, Defendants argue that Hawthorne cannot carry his burden with respect to elements two through five.  (ECF No. 101 at 13-15.)

### 1. Retaliatory Motive

To satisfy the causation element of a retaliation claim, a plaintiff must show that his First Amendment activity was "the substantial or motivating factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (internal quotation marks omitted).  The evidence establishing such a motive is often circumstantial, *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995), but "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Defendants contend that there is no causal connection between the alleged retaliatory acts and the filing of the narrative used in the disciplinary charges because the record shows no evidence of Mackenzie providing the narrative for any reason other than Hawthorne's improper man down call.  (ECF No. 101 at 14.)

The notice of charges provides the following narrative written by Mackenzie:

> On January 2, 2016, I, Mackenzie Bennington RN was working my assigned position in Unit 8A at NNCC. At approximately 0612, a man down was called for an inmate with "back pain".  Medical was notified at approximately 0612, and arrived in Unit 2 at approximately 0618. Inmate Hawthorne was assessed, and it was deemed that he was not suffering from any acute illness. He had a routine chronic medical need that could have been deferred until the next scheduled sick call or clinic. Inmate Hawthorne was determined to have called a frivolous man down, and was instructed to follow appropriate kiting procedures. End of report.

(ECF No. 101-1.)  Based on this narrative, Hawthorne was charged with (1) giving false

information, and (2) delaying, hindering, interfering with staff. (*Id.*) Hawthorne was subsequently found guilty of the "delaying, hindering, interfering with staff" charge, and the "giving false information" charge was dismissed. (*See* ECF No. 101-10.) On January 4, 2016, Hawthorne filed a grievance related to the January 2, 2016 incident. (*See* ECF No. 101-5.) The response to the informal grievance was as follows:

> Mr. Hawthorne, you were seen by a provider on 1/4/2016 and ordered medications and a wheel chair accordingly. Notice of charges are generated by custody not medical staff. Medical staff only fills out a DOC2514 Unusual Occurrence form which tells when the incident happened, who was involved, what the incident was, and how it was handled.

(ECF No. 101-5 at 2.) The response at the first level was as follows:

> I have reviewed your medical chart in reference to your complaint in the above referenced grievance and I find that you were responded to correctly at the informal level. The completion of a DOC 2514 is mandatory for all unusual occurrences and a mandown call is considered an unusual occurrence. Any disciplinary actions taken by custody have nothing to do with the medical staff as we have no authority over custody issues.

(*Id.* at 4.)

Hawthorne argues that the temporal proximity alone from the filing of the disciplinary charges and his request for medical care and a grievance is sufficient to constitute evidence of retaliatory motive. (ECF No. 113 at 19.) However, the evidence in the record affirmatively demonstrates that the disciplinary charges were filed in response to what was determined to be a frivolous man down and the narrative written by Mackenzie was a mandatory filing based on the man down call. Thus, Hawthorne's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Because Hawthorne has not presented any evidence to the court that his First Amendment activity was the substantial, or motivating, factor behind Defendants' actions, he has not carried his burden of demonstrating a genuine issue for trial. As no reasonable jury could conclude that the alleged retaliatory acts occurred *because of* his request for a grievance,

Defendants are entitled to summary judgment.[4]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 101) be granted and Hawthorne's motion for sanctions (ECF No. 109) be denied as moot.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 101) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Hawthorne's motion for sanctions (ECF No. 109) be **DENIED as moot**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: May 14, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The court does not address Defendants' exhaustion or qualified immunity arguments because the court finds that Hawthorne's constitutional claims fail on the merits.  Further, the court finds that Hawthorne's motion for sanctions (ECF No. 109), regarding Defendants' exhaustion argument should be denied as moot.